MARY CARPENTER v. JAMES M. KURN and JOHN G. LONSDALE, Trustees of ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Debtor, Appellants.—157 S. W. (2d) 213.

Division Two, December 16, 1941.

*M. G. Roberts, E. G. Nahler* and *Mann & Mann* for appellants.

1134

1136

*Sizer & Myres* and *Harry G. Waltner, Jr.,* for respondent.

 **1137**

 TIPTON, P. J.—Respondent brought this action as widow of Reuben Carpenter, deceased, to recover damages for alleged wrongful death of her husband, which occurred on May 25, 1937, near Henryetta, Oklahoma. She brought this action for the benefit of herself and deceased's four minor children. This action was first tried in the Circuit Court of Barry County, Missouri, where respondent obtained a judgment for $18,000. We reversed that judgment for error in respondent's instruction; our opinion is reported in 345 Mo. 877, 136 S. W. (2d) 997, where a full statement of the facts may be found. Thereafter, the case was sent to Henry County, Missouri, on a change of venue, where a judgment of $20,000 was obtained by respondent. The appellants have duly appealed from that judgment.

 The appellants' first assignment of error is that their demurrer to the evidence should have been sustained. The accident in question occurred on appellants' track about a mile south of Henryetta, when deceased was run over by one of appellants' trains while he was sitting on the east rail of appellants' track. The respondent's evidence in this trial was substantially the same as it was in the first trial. The appellants had some new evidence which was expert testimony showing in what distance the train could be stopped. Under these circumstances, we are bound by our first decision in holding that respondent made a submissible case, unless we made a mistake of fact or law. [Kick v. Franklin, 345 Mo. 752, 137 S. W. (2d) 512; Arnold v. Alton R. Co., 348 Mo. 516, 154 S. W. (2d) 58.] We have re-examined the facts and have come to the conclusion that respondent made a case for the jury. The additional evidence merely controverted the respondent's evidence. Moreover, this additional evidence was only accumulation of evidence offered by appellants in the first trial. The

jury evidently did not believe appellants' evidence. This they had a right to do.

The appellants assigned as error the testimony of witnesses Sherman Gipson and Luther Houk, who testified that on two occasions following the accident, they, with others, made certain tests for the purpose of ascertaining the distance one standing on the track could tell that a person sitting in the same position and dressed the same as deceased was a human being. The conditions under which these tests were made were the same as existed when deceased was struck by appellants' train, except that persons making the observation were on foot instead of being in the cab of a moving engine.

The appellants contend this testimony is inadmissible; first, for the reason that these witnesses knew in advance the object on the track when the tests were made was a man and just how he was dressed, and second, that these witnesses were on foot, while the engineer was in a moving engine attended with much vibration and lateral motion.

" '. . . But, if the evidence shows that the experiment was made under circumstances similar, or approximately similar, to those which surround.the original transaction, and such experiment would serve to shed any light upon that transaction, we can see no reason for the exclusion of such experiment, although it might not have been made under exactly similar conditions as attended the original transaction. The dissimilarity would not exclude, but would go to, its weight before the jury. . . .' " [Amsbary v. Grays Harbor Ry. & Light Co., 78 Wash. 379, 139 Pac. 46, l. c. 51, 8 A. L. R. 1.]

The above quotation was approved by this court in the case of Griggs v. Kansas City Rys. Co. (Mo.), 228 S. W. 508, l. c. 512. In that case, we held: "The difference in the conduct of such an experiment arising from the fact that the experimenter looks for what he is expected to see, while the engineer or motorman is expected only to watch for any object that might appear upon the track, and has his attention more or less engaged in operating his car or engine, is not a difference of condition sufficient to warrant the exclusion of the evidence. Its weight is a matter for the jury." To the same effect is the case of Norfolk & W. Ry. Co. v. Henderson, 132 Va. 297, 111 S. E. 277. We, therefore, overrule appellants' first objection to this testimony.

The question next arises, were the conditions when the witnesses were standing on the track making the experiments substantially the same as those when the engineer was in the cab of his engine, when the accident occurred resulting in deceased's death? Respondent's witness Ruskoski testified that an engineer could not see as far when the engine was running as when it was standing still, but he did testify that the engineer on a moving engine could see as well as a man standing on the ground and that the lateral motion of the cab impairs the view of an engineer looking down the track "very little, if any," and is not noticeable. Respondent's witness Wilson testified

that side-sway "didn't have any material effect on your vision, and that you could see as far looking through one of those plate glasses as you could if you were standing on the ground."

The Supreme Court of Arkansas, in ruling almost the same question in the case of St. Louis, I. M. & S. Ry. Co. v. McMichael, 115 Ark. 101, 171 S. W. 115, l. c. 121, said:

"We are of the opinion that the court did not err in holding that the conditions under which the experiments were made by the witnesses on behalf of the appellee were substantially the same. It is true that the witnesses who made these observations were not on an engine moving at a speed of 35 or 40 miles an hour, but there was testimony of expert passenger engineers to the effect that one accustomed to the movements of an engine could see a man as plainly from an engine going 35 or 40 miles per hour as one standing or walking on the track. This testimony, although contradicted by expert passenger engineers testifying for appellant, was nevertheless sufficient to render the testimony of the witnesses for appellee competent, so far as the essential similarity of viewpoints was concerned."

To the same effect are the following cases: Panhandle & S. F. Ry. Co. v. Haywood (Tex. Civ. App.), 227 S. W. 347; Young v. Clark et al., 16 Utah, 42, 50 Pac. 832; Cox v. Norfolk & C. R. Co., 126 N. C. 103, 35 S. E. 237; and Norfolk & W. Ry. Co. v. Henderson, 132 Va. 297, 111 S. E. 277. We, therefore, hold that this evidence was properly admitted.

 The appellants contend the court erred in refusing their requested instructions, numbers 11 and 12. The first paragraph of both these instructions is the same, and is as follows:

"The Court instructs the jury that a railroad track is, in and of itself, a signal and warning of danger; that when the deceased, Reuban Carpenter, went upon said track and sat down upon one of the rails, and as long as he remained there, he was charged by the law with the duty to exercise ordinary care, to look carefully and listen carefully for approaching trains, and it was his duty to leave the track and go to a place of safety if he saw, or by the exercise of ordinary care could have seen, the train in time for him to do so, by the exercise of ordinary care on his part; and this duty to look carefully and to listen carefully for approaching trains was a continuing duty resting upon him so long as he remained upon said track; and said duty was not lessened or excused by reason of the fact, if you find it to be a fact, that he was either asleep or intoxicated."

The second paragraph of instruction number 11 deals with contributory negligence, while the second paragraph of instruction number 12 embodies the sole cause theory.

Section 6, Article 23, of the Oklahoma Constitution provides:

"The defense of contributory negligence or assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

The appellants therefore contend that their instruction on contributory negligence should have been given. They say, in their brief, "We have found no Oklahoma case submitted under the last clear chance theory, in which the question here is directly passed upon." Our research has found none.

However, the Oklahoma Supreme Court, in the case of St. Louis-San Francisco Ry. Co. v. Bryan, 113 Okla. 39, 237 Pac. 613, l. c. 614 and 615, in reference to the last chance doctrine, said:

"This rule has been recognized by this court as an exception to the general rule that contributory negligence of the person injured will bar a recovery. It declares that the injured person may recover damages resulting from the negligence of the defendant, although he himself be guilty of contributory negligence, if the injury was caused more immediately by want of care on the defendants' part to avoid the injury after discovering the peril of the injured party. . . .

"The defendants further contend that this instruction is erroneous, for the reason that it did not contain a provision as to concurrent and contemporaneous negligence of the parties; it being their contention that, if the plaintiff and defendants were concurrently negligent, no recovery could be had, and, in order for the plaintiff to recover, some negligent act of the defendants must be shown, which occurring, after the contributory negligence of the injured party had ceased, caused the injury. We do not agree with this contention. The last clear chance doctrine applicable here contemplates a danger which the engineer, having knowledge thereof, may avoid by due care on his part. To hold that if he, having the last clear chance to avoid the injury by the exercise of due care, is excused if the injured party's negligence ▓▓▓ continues or is concurrent, is to deny the application of the last clear chance doctrine. It, in effect, would be holding that the rule of contributory negligence would apply and be a defense under such circumstances."

The last clause of the above quoted paragraph from appellants' instructions says: "and this duty to look carefully and to listen carefully for approaching trains was a continuing duty resting upon him' (deceased) so long as he remained upon said track; and said duty was not lessened or excused by reason of the fact, if you find it to be a fact, that he was either asleep or intoxicated." To hold that this part of instructions 11 and 12 should have been given would, as said by the Oklahoma Supreme Court in the Bryan case, "deny the application of the last clear chance doctrine."

These instructions do not follow the law as declared by the Bryan case, or as declared by us on the first appeal of this case. They could have only misled the jury as to the real issues, and were properly refused. It may be that a proper instruction on contributory negligence could have been submitted, but it is not necessary to rule that question.

■ Appellants contend that respondent's instruction number 1, providing that upon finding of facts there hypothecated, the "verdict should be for the plaintiff, even though you may believe the deceased was a trespasser and was intoxicated and guilty of negligence in sitting upon the track," makes this instruction erroneous. We have been cited no Oklahoma case on the point. We held on the first appeal that the negligence of the deceased in sitting on the track would not bar a recovery if the train could have been stopped in time to avoid striking him, after the engine crew discovered him in a position of peril. In effect, this is what the instruction told the jury. We hold this instruction is not erroneous.

■ The appellants' last assignment of error is that the verdict is excessive. The deceased was thirty-five years of age. He had a wife and four minor children. While the evidence is conflicting as to the amount of his earnings, we must be guided by respondent's evidence, since the jury returned a verdict in her favor. Respondent testified that her husband worked in the mines and earned $7 a day for an average of 150 days a year; that when he was not working in the mines he averaged $1.50 a day working for farmers for an average of 150 days a year. In other words, he made an average of $1050 a year working in the mines, and $225 a year working on farms, making a total annual earning of $1,275. He had a life expectancy of approximately thirty-one years.

We have reviewed the Oklahoma case cited us and find that the facts in this case are more comparable to the facts in the case of Chicago, R. I. & P. Ry. Co. v. Brooks, 11 Pac. (2d) 142, than in the other cases. In that case, deceased had a life expectancy of thirty-one years, with an annual earning of approximately $1,400. The verdict for $35,000 was reduced to $17,500. We will not lengthen this opinion by a review of authorities, but will content ourselves with being guided by the Brooks case, supra. We, therefore, think the verdict is excessive by $5,000.

If respondent will, within ten days from the filing of this opinion, enter a remittance of $5,000, as of the date of judgment in the trial court, the judgment will be affirmed; otherwise, the judgment will be reversed and the cause remanded. All concur.