**UNION ELECTRIC COMPANY, a Missouri Corporation, (Plaintiff) Respondent,**

**v.**

**M. J. MOUNT and Florence C. Mount, His Wife, (Defendants) Appellants.**

No. 31544.

St. Louis Court of Appeals.

Missouri.

Dec. 15, 1964.

Motion for Rehearing or for Transfer to Supreme Court Denied Jan. 8, 1965.

Application for Transfer Denied Feb. 8, 1965.

Roberts & Roberts, Raymond R. Roberts, Farmington, for defendants-appellants.

Schnapp, Cooper & Graham, J. B. Schnapp, Fredericktown, Thurman, Nixon & Smith, J. W. Thurman, Hillsboro, for plaintiff-respondent.

J. P. MORGAN, Special Commissioner.

This action was commenced by Union Electric Company, herein called plaintiff, to condemn a right-of-way easement 100 feet wide across land of defendants for the purpose of constructing and maintaining an electric transmission line. A jury trial on the issue of damages resulted in a verdict for defendants in the sum of $1000.00. Defendants have appealed.

Plaintiff has now filed a motion to dismiss the appeal alleging that defendants' brief fails to comply with Rule 83.05(c) of the Rules of Civil Procedure, V.A.M.R. in that the statement of facts is primarily a recitation of the testimony of each witness. Defendants contend, "The evidence in this case, however, relevant to the issues of this appeal, is almost exclusively opinion and expert testimony * * * to lift such opinions out of context with the other statements of an expert witness, his qualifications, his knowledge of the facts and the cross-examination in order to make the ordinary statement is most misleading, unfair and meaningless."

With the sole issue relating to damages and finding the statement does include all essential facts relevant to the appeal, the motion directed at the form and not the

contents of the statement should be overruled and the appeal decided on its merits.

The evidence revealed that defendants owned the 180 acre tract in question. That the right-of-way easement ran 699 feet diagonally across the northwest corner. No poles or other structures were placed on the property and the transmission line was all "overhang" at a minimum height of 48 feet consisting of three electrical lines with two wires protecting against lightning. From 1960 to 1962 a rock quarry had been operated on this land, but was now filled with water. The line is approximately 500 feet from the nearest edge of the quarry. A railroad track was located on the north edge of the property with a telephone line and a smaller electrical line along either side. The older electrical line was 400 feet north of the quarry and the telephone line 340 feet. Much of the land was in the soilbank and most of the testimony revolved around the effect, if any, the line might have on any possible future operation of the quarry.

 Defendant (husband) charged the trial court erred in permitting plaintiff to cross-examine him concerning the assessed valuation of his farm lands, and that the error was compounded by allowing one Fred H. Long to testify what the assessed valuation actually was. At first blush, this assignment appears to have merit in that it is established that such evidence is irrelevant and incompetent, with a rather indefinite exception where the landowner has "participated" in such assessment. The general rule is stated in 39 A.L.R.2d 230:

"Although, as previously indicated, assessed valuation, as such, is not generally admissible on the question of the value of property, an owner's valuation of his own property, or a valuation in which he has participated, for tax purposes, is usually held admissible in proceedings other than tax proceedings where the value of the property is in issue, in most instances on the ground that the owner's valuation constitutes

an admission against interest, where he seeks to establish a higher value for a purpose other than taxation. * * *"

Our Supreme Court in Kansas City & G. Ry. Co. v. Haake, 331 Mo. 429, 53 S.W. 2d 891, 892, 84 A.L.R. 1477, recognized such exception, to-wit.

" * * * If it can be shown that the landowner has himself placed a value on the property in question, whether for taxation or otherwise, or has in some way assented or even acquiesced in fixing the valuation, then such evidence might well be proper on cross-examination and as contradictory of such witness. * * *"

It is apparent from the record that plaintiff planned the hazardous approach of attempting to bring such evidence within the uncharted limitations of such exception. This effort being based on the fact that defendant landowner happened to be a Judge of the County Court and that by the provisions of Section 138.010 V.A.M.S., 1959, was automatically a member of the County Board of Equalization. Plaintiff in its brief sets out in detail the duties of such Board, but the following portions of the applicable statutes will suffice to show what tempted such adventurous trial strategy:

Section 138.030 "The board shall hear complaints and equalize the valuation and assessments upon all real and tangible personal property taxable by the county so that all the property shall be entered on the tax book at its true value. * * *" Section 138.050 "They shall raise the valuation of all tracts or parcels of land and all tangible personal property as in their opinion have been returned below their real value; * * *."

 The evidence does not show that the lands involved were ever a subject of decision by the Board or that defendant's assessment was not comparable to that of others in the county.

With the ultimate objective of the usual condemnation case being a determination of the difference between the fair market value of the property before and after the taking, it is difficult to justify any exception for purposes of impeachment or otherwise, which could only tend to mislead the jury. As stated in St. Louis Housing Authority v. Gordon, Mo.App., 382 S.W.2d 451, " * * * The objection to this evidence is that the value was for tax purposes and not its value on the market. It simply was not evidence of market value. * * *" Even if the exception is to be followed, it would appear that it should demand a more active "participation" than that here charged to defendant.

However, plaintiff's argument that defendant did not object to this evidence necessitates extending this opinion to include all testimony relating to assessed value. (All objections, if any, being italicized.)

Defendant as witness:

"Q. Has there been any sickness or other reasons that's caused you to miss a performance of some of your duties?

"Mr. Roberts: *If the Court please, I object to that for the reason it's immaterial, we're not trying to find out if Mr. Mount's been sick and missed his duties with the County Court, we're trying to find out how much Union Electric owes him for the land they're taking.*

"Mr. Schnapp: If it please the Court, I believe we can hook it up and it'll come material.

"The Court: I don't know how, but I'll let you ask another question or two and see if you can.

"Q. Have you sir?

"Mr. Roberts: *Well, go ahead, I'll withdraw the objection, let him go, Your Honor.*

"A. Ask that question again.

"Q. Has any sickness or other reason caused you to miss the performance of some of your duties?

"Mr. Roberts: *You mean as Judge of the County Court?*

"Mr. Schnapp: Yes, as Judge of the County Court.

"A. No.

"Q. And you have discharged the duties of your office according to the laws of the State of Missouri?

"Mr. Roberts: *Now, if the Court please, I'm certainly going to object to that, this man is not a lawyer.*

"The Court: Objection will be sustained, if you want to make your offer of proof come up here.

"Mr. Schnapp: May I ask another question, Your Honor?

"The Court: All right.

"Q. Are you a member of the St. Francois County Board of Equalization?

"A. Yes, sir.

"Q. That Board of Equalization meets on the second Monday of July of each year?

"A. Yes, sir.

"Q. And have you attended those meetings?

"A. Yes, sir.

"Q. And St. Francois County Real Estate is assessed at 30% of its actual value?

"A. Well, now, we, no, no.

"Q. What is it assessed at, sir?

"A. Well, I believe the Tax Commission says we're 28⁵⁄₁₀.

"Q. All right, sir, that's what it's assessed at 28⁵⁄₁₀, did you ever advise the other members of the Board

of Equalization that this 180 acres of land that you own was under assessed?

"A. No.

"Q. Did you ever advise the other members of the Board of Equalization that the assessed valuation of your 180 acre tract of land should be raised?

"A. No, sir.

"Q. And now I ask who this 180 acre tract of land, what is the assessed valuation for the year 1962?

"A. I wouldn't be able to tell you.

"Q. You don't know what the assessed valuation of your land is?

"A. No, it's assessed in two or three different particles and I wouldn't be able to tell you.

"Q. Can you total it up for us?

"A. I wouldn't be able to without my records.

"Q. If I told you the total assessed valuation on all your property was $5,000.00 would that seem right?

"A. I wouldn't know until I see my records.

"Q. Do you know how much your total tax bill was?

"A. Oh, it was a little less than $300.00.

"Q. Less than three hundred, how much less?

"A. Well, I don't remember, it was less than three hundred last year.

"Q. Do you know what your assessed valuation was for 1961?

"A. The same as it was in 1960.

"Q. And in, well, do you know how much it was in 1960?

"A. The same as it was in 1959.

"Q. Do you know what it was in '59?

"A. Same as it was in '58.

"Q. Do you know the amount of taxes you paid in any of those years?

"A. No, off hand, I do not.

"Q. If I told you your property was assessed at $4,000.00, would that sound right?

"A. I wouldn't know until I looked at my records.

"Mr. Roberts: *When?*

"Mr. Schnapp: For any of those years that he says is absolutely the same, do you have those records with you?

"A. No, sir.

"Q. In the event that this case last more than one day, will you produce those records tomorrow?

"A. Sure, yes, sir.

"Q. Would you say, that your 1961 taxes were $168.81 on this property?

"A. I wouldn't say what it is.

"Q. Is that approximately correct?

"A. I wouldn't make a guess until I see my records, I have other property besides this farm property, quite a bit, and you just don't keep those things in your head.

"Q. So you're not sure?

"A. No, I'm not sure.

"Q. As to the assessed valuation?

"A. No, sir.

"Q. If the assessed ·valuation was $4,100.00 on your property.

"Mr. Roberts: *If the Court please, I'm going to object to all this ifing, if Mr. Schnapp wanted those records he could have let know and we'd of brought them or he could have subpoenaed them.*

"Mr. Schnapp: They'll be here, Mr. Roberts, just asking this man.

"The Court: Go ahead, go ahead with your question let's move along.

"Q. Now, at the rate of 28.5% of its true value, and assuming it's assessed at $4,100.00, what would be the total value of your property?

"A. Well, you have a pencil, I don't know.

"Q. Approximately $12,000.00, would that be about right?

"A. Well, I don't know, I'd have to.

"Q. And you never once told the other members of the Board of Equalization that this land was under assessed?

"A. No, sir.

"Q. And you're the presiding judge of that body?

"A. Yes, sir."

Long as witness:

"Q. Would you state your name, sir?

"A. Fred H. Long.

"Q. Where do you live, Mr. Long?

"A. St. Charles, Missouri.

"Q. Now then, have you recently had an occasion to check the assessed valuation of the property, the whole 180 acres belonging to M. J. Mount, St. Francois County?

"A. Yes, sir.

"Mr. Roberts: *I object to that, because checking of the assessed valuation might be, we have it before this jury.*

"Mr. Schnapp: If the Court please, Mr. Mount said he did not know when I asked him the other day and I want to ask him that today.

"Q. You did check it?

"A. Yes, sir.

"Q. You checked the assessed valuation of that ground, 180 acres tract owned by Mr. Mount for 1962, what is the assessed valuation?

"A. Well, sir, I don't have it with me up here on the stand, I have it in the Courtroom.

"Mr. Roberts: If the Court please, we're going to object to that, the records would be the best item, oh, go ahead.

"A. I can get it real quick.

"Mr. Roberts: *Go get it.*

"Q. Now, can you tell me what the assessed valuation of this whole 180 acre tract was for the year 1962?

"A. Yes, sir.

"Q. What was it?

"A. Forty-one hundred dollars.

"Q. How much was it for, for the year '61?

"A. I believe it was the same.

"Q. For '60?

"A. I believe it's the same.

"Q. For '59?

"A. I believe it's the same.

"Q. $4100.00 for 180 acre tract?

"A. Yes, sir.

"Mr. Schnapp: No further questions.

"Mr. Roberts: *No questions.*"

■ In search of an objection the record as designated "Mr. Roberts" can be reviewed chronologically. The first objection as to whether or not defendant had been prevented by illness from performing his duties was made and later withdrawn. In any event the trial court could not have anticipated at this point where the interrogation was leading, and properly ruled to allow a few more questions. The objection with reference to defendant performing his

duties as Judge of the County Court according to law was sustained. At this time the questions asked began to reveal the objective of plaintiff. It must be noted that no objection at all was made to any question relating to assessments, and that the last complained only of the "if" nature of an incompleted question with the interesting suggestion that defendant would have provided such assessment if requested. During the testimony of Mr. Long, the first objection complained that the question was repetitious as the assessed valuation was already before the jury, and it made no complaint as to the answer sought. The failure of the court to rule on this objection is really not germane to that of which defendant now complains. The last objection related to the record being the best evidence, and if not withdrawn by "Oh, go ahead" and later "Go get it," certainly left nothing upon which the trial court could have made an intelligent ruling. In addition to there being no objection, general or specific, to the subject matter of the inquiry, it must be noted that at no time was any motion made to strike any portion of this testimony. Unless the trial court is to be charged with the additional burdens of the advocate, this assignment of error must be ruled against defendant. Gerald v. Caterers, Inc., Mo.App., 382 S.W.2d 740; Supreme Court Rule 83.13(a).

Defendant contends the trial court erred in admitting improper evidence by witnesses called by plaintiff.

■ The first, Fred Weber, over objection of defendant, testified that he had supervised blasting operations much closer to electrical lines than those in the instant case, and picture exhibits of such experience were admitted in evidence. The objection was apparently based on the agreed fact that rock on defendant's land was dolomite and the experiences related did not include this exact type. However, it did include dolomitic rock which was shown to be very similar in structure. The witness was shown to be president of a construction firm building highways all over the state and in quarry operations for over twenty years. Surely this experience would be beyond the realm of the average juror, and the court ruled correctly in finding that his testimony could be of assistance to the jury. Any dissimilarity should not exclude but merely go to the weight of this testimony. Carpenter v. Kurn, 348 Mo. 1132, 157 S.W.2d 213.

■ As shown by the record, defendant by extended cross-examination did bring out all such distinctions. It is consistently held that the qualifications of an expert to give an opinion on a proper subject is largely within the discretion of the trial court and its ruling is not to be overturned unless such discretion has been abused. Christian v. Jeter, Mo., 287 S.W.2d 768; Union Electric Company of Mo. v. Simpson, Mo.App., 371 S.W.2d 673.

■ Further error is charged reference testimony of witness John Mothershead who expressed the opinion there was no damage in that the value before and after taking was $28,000. Complaint is made that he failed to consider possible damage to the quarry. It should be sufficient to point out that if the so-called expert witness is aware of the full extent of the taking, there is no requirement that he must place a monetary figure on or even consider each itemized element of value claimed to have been damaged by the landowner, but may base his opinion on those items of damage apparent to him; and, more specifically, that no objection was made at the trial which preserved the point for appellate review. Bush v. Anderson, Mo.App., 360 S.W.2d 251.

■ Defendant's argument that his witness, Arch Hall, was not allowed to place a value on the rock only is without merit. When the witness was first offered, the court did instruct the jury to disregard two non-responsive voluntary statements that rock in the quarry was worth 10¢ a ton. Without setting out the extended testimony,

it is fair to say that the questions as asked made it obvious that the witness had no opinion as to the value of the land itself with or without rock. As stated in Union Electric Company v. Jones, Mo., 356 S.W.2d 857: " * * * where land contains minerals, measure of compensation is value of land with minerals in it."

The witness was dismissed and after others had testified was called again. The court at this time was very considerate in allowing him to express a new found opinion as to before and after values.

■ It is true as defendants now argue that a witness may properly be asked how he arrived at a total valuation given or to explain what items he considered. State Highway Commission, State ex rel. v. Clevenger, 365 Mo. 970, 291 S.W.2d 57; State Highway Commission, State ex rel. v. Flynn, Mo.App., 263 S.W.2d 854. However, as the record reveals, after the witness had resolved his thinking to such an extent as to be accepted as an expert witness, no such inquiries were made. The trial court cannot be charged with an error it had no opportunity to make.

■ Other allegations of error again refer to the court's refusal of testimony by defendant himself. These were: (1) How far rock was actually blasted by the quarrying operation, (2) The uninsurability of the quarry after the erection of the highline, and (3) That there was a marked interest in the quarry site among the quarrying industry. The first is answered by his own testimony that he was never present when they were shooting rock. As to the second, an objection was properly sustained on the grounds that relating what a broker had said he had been told by engineers of

several insurance companies would be hearsay, and the court specifically encouraged defendant to offer any *competent* witness on this point. The third point is not an accurate reflection of the record. A marked or active interest in the land can be an element of value. City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839. However, when the court sustained an objection to defendant's effort to testify that individuals had come to lease the property, apparently on the grounds that offers to lease should not be admitted, Missouri Public Service Company v. Hunt, Mo.App., 274 S.W.2d 27; City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S.W.2d 661; defendant's offer of proof failed to advise the court the purpose of this testimony, and no attempt was made to show that the object was that which is now urged.

■ The last assignment is that the verdict was inadequate. In addition to the evidence previously related, other qualified witnesses expressed opinions that defendants did not suffer any damage. Where the verdict is supported by substantial evidence, it should not be disturbed. State ex rel. Kansas City Power and Light Company v. Gauld, Mo.App., 222 S.W.2d 940.

Your commissioner recommends that the judgment be affirmed.

PER CURIAM:

The foregoing opinion by J. P. MORGAN, Special Commissioner, is adopted as the opinion of the court.

Accordingly, judgment of the trial court is affirmed.

RUDDY, P. J., and ANDERSON and WOLFE, JJ., concur.