KANSAS CITY & GRANDVIEW RAILWAY COMPANY v. CHARLES G. HAAKE ET AL., THOMAS T. MOORE, Defendant-Appellant.—53 S. W. (2d) 891.

Division One, October 22, 1932.*

---

*NOTE: Opinion filed at April Term, 1932, September 3, 1932; motion for rehearing filed; motion overruled at October Term, October 22, 1932.

*Gossett, Ellis, Dietrich & Tyler* and *Burrus & Burrus* for appellant.

*Cyrus Crane, Winston H. Woodson* and *James F. Walsh* for respondent.

STURGIS, C.—Condemnation for right of way for a railroad by plaintiff over the lands of defendant. Several landowners were made parties defendant to the proceedings in the circuit court, but this appeal involves only the land of the defendant Thomas T. Moore, who will be referred to in this opinion as the defendant. He owned in all one hundred eighty acres of land about two miles south of the limits of Kansas City and the proposed railroad extends from Kansas City south to Grandview, a distance of some twelve or thirteen miles, and crosses the land in question. Commissioners were appointed in the circuit court to assess the damages, and, exceptions being filed to their report, issues were framed and tried to a jury on the question of damages in that court. A large amount of evidence was heard on either side, the defendant Moore taking the opening and closing. The evidence was wholly on the amount of damages and was very contradictory. The trial resulted in a verdict and judgment for defendant in the sum of $7500, from which defendant has appealed. He complains that errors were made in trying the case in admitting and rejecting evidence, and in the instructions given.

The defendant's land is situated on both sides of a north and south paved highway called Hillcrest Road, there being sixty acres west of this road and one hundred twenty acres east. The damages assessed was to the one hundred twenty acres east of this road. The railroad right of way in question is one hundred twenty feet wide

and extends across one forty, the Northeast quarter of the Northwest quarter of Section 36, sometimes called the east or northeast forty. The other eighty acres of the one hundred twenty-acre tract east of the highway is the West half of the Northwest quarter of that section, and Hillcrest Road runs along the west side of this eighty. The dwelling house and improvements are near the Hillcrest Road on the south forty of this eighty. The railroad enters this east forty acres near the middle of its north line and extends south with a curve to the east and passes off the defendant's land near the southeast corner of this forty acres. The land slopes to the south and the railroad enters the east forty acres of the land from the north in a cut over thirty feet deep and leaves it on a fill over twenty feet high. The railroad cuts off eight or nine acres on the east side of this forty, leaving twenty-eight or twenty-nine acres in a body with the west eighty. There is an east and west public road on the north of this land but not so well improved as that on the west. The land was at the time being used as a dairy farm. No damage was shown or allowed to the sixty acres west of the Hillcrest road.

There was a large number of witnesses on each side who testified to the damages caused by the right of way being taken and consequent damages to the remainder of the one hundred twenty-acre tract, such damages being estimated on the value of the land actually taken and the decrease in the fair market value of the balance of the tract with and without the railroad being constructed there. The question of the fair market value of the land without the railroad crossing it was sharply contested and with much difference of opinion. The evidence for defendant showed the land to be reasonably worth from $850 to $1000 per acre. That of the plaintiff put the fair market value at $400 or $500 per acre. Plaintiff's witnesses placed the damages at not over $2000 for the land actually taken and the damages to the other land correspondingly low, making a total damage of from $4000 to $6000. Some of the witnesses said the west eighty acres of the one hundred twenty acres was not damaged at all. The defendant's witnesses fixed the damages at about $4000 for the land actually taken and the damages to the other land correspondingly high, making a total damage of $25,000 to $30,000. The jury fixed the damages at $7500.

■ The first error which we are called on to consider is that the trial court allowed the plaintiff to put in evidence, over defendant's objections, the assessed valuation for general taxation of the land in controversy for the year 1927, the date of the condemnation. It was shown in this connection that defendant Moore did not make out any assessment list covering this land giving its value; that he

had nothing to do with or knowledge of the assessment and in no way assented to this assessment or valuation. He paid the taxes assessed, but that is all, and he said he gave the matter no attention. The objection made by defendant to this evidence is that this assessment is not a true criterion of value; that defendant Moore was not consulted and had nothing to do with the assessment; that it is ex parte and in the nature of hearsay.

Unless there is something to take this out of the general rule, we think the objections to this evidence should have been sustained. Unquestionably, the law is, and ought to be, that the valuation placed upon property by a public official for purposes of taxation only is not competent evidence to go to a jury on a litigated question of the value of the land. If it can be shown that the landowner has himself placed a value on the property in question, whether for taxation or otherwise, or has in some way assented or even acquiesced in fixing the valuation, then such evidence might well be proper on cross-examination and as contradictory of such witness. On this, however, the authorities are not all agreed. [Jackson v. Goldberg (Tex.), 283 S. W. 860; Vineyard Grove Co. v. Town of Oak Bluffs (Mass.), 163 N. E. 888.]

The rule of law is stated in 22 Corpus Juris, 178, thus: "The general rule is that a valuation made by public officials for the purpose of taxation, especially when remote in point of time, is not relevant to aid a jury in assessing the value of land or buildings, unless such valuation is based on a statement by the owner, in which case it is competent against him, especially if his statement was made under oath." And in 13 Ency. of Evidence, 455, it is stated thus: "If the valuation is made by the assessor, without participation by the owner, or if the latter's verification is limited to the correctness of the list so far as his ownership of the property is concerned, such valuation is not evidence of the cash or market value of the property." In addition to the many authorities cited in Corpus Juris, supra, see also the following cases: Jackson v. Goldberg (Tex.), 283 S. W. 860; Littledike v. Wood (Utah), 255 Pac. 172; Allard v. La Plain (Me.), 130. Atl. 737; Vineyard Grove Co. v. Town of Oak Bluffs (Mass.), 163 N. E. 888; Ridley v. Seaboard Railroad Co. (N. C.), 32 S. E. 379; Hamilton v. Seaboard Air Line Ry. (N. C.), 63 S. E. 730; Denver & R. G. Railroad Co. v. Heckman (Colo.), 101 Pac. 976.

In Littledike v. Wood, supra, the court said: "In the case of Cincinnati, H. & I. Railroad Co. v. McDougall, 108 Ind. 179, 8 N. E. 571, it is said that such valuations are to be regarded as having been made for a special purpose, and that they are not competent as original evidence of value for any other than the purpose for which they were made, and that such lists are not competent either

for or against the lister as original substantive evidence to establish the value of a particular article of property. The reason for the rule is stated by the court in the case of Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279, to be that an assessment is merely an *ex parte* statement made by an officer not subject to cross-examination, and is no evidence of the value of the land assessed.''

The reason for the rule is stated by the court in Ridley v. Seaboard Railroad Co. (N. C.), supra, thus: ''But, the tax valuation being placed on the land by the tax assessors without the intervention of the landowner, no inference that it is a correct valuation can be drawn from his failure to except that the valuation is too low. Such valuation was *res inter alios acta* and is not competent against the plaintiff in this action.'' And in Hamilton v. Seaboard Air Line Ry. (N. C.), supra, the same court said: ''Under our revenue law, the owner of land does not in listing it for taxation fix any value upon it. This is done by the assessors 'either from actual view or from the best information they can practicably obtain, according to its true valuation in money.' . . . We cannot see, therefore, how the fact that the witness 'listed' the land for taxation has any tendency to show its value or his opinion in that respect. The valuation is, as said by this court in Ridley v. Railroad, 124 N. C. 37, *res inter alios acta*.''

Nor is it correct, if that be material, that this evidence went in as part of the defendant's cross-examination as a witness to test his knowledge, etc. It is true that the defendant was asked on cross-examination as to the assessed value of the land in question for the year 1927, but he disclaimed any knowledge or information of the matter. The plaintiff was allowed to exhaust his examination of the witness on this subject on the theory that he might admit having something to do with fixing the assessed value, and failing to get the information sought, plaintiff did not drop the matter there but insisted on its right to put this in evidence. The court overruled the persistent objections of the defendant that this evidence was not competent or proper to show the reasonable market value, and plaintiff still insisted on showing such valuation. The court then suggested that the assessor be called unless the parties could agree on what the assessment record would show. To save time and trouble, the defendant's attorneys then agreed as to what the books would show, but strenuously objected to the competency and admissibility of the evidence. It was then stated to the jury, as an agreed fact, that the assessed valuation of the forty acres of land through which the railroad passed, for that year, was $3600 or $90 per acre, and the eighty acres was valued at $8750 plus $2500 for improvements. It was also agreed by the attorneys, in the hearing of the jury, that

land in that county was generally assessed at about forty per cent of its value, but whether this was forty per cent of its value for all purposes or as farm land was not agreed. The record shows, we think, that this evidence went in as an independent fact shown by the tax records and not as cross-examination of the witness or as contradictory of anything he testified to. Nor do we think that defendant can be held to have waived his objections to this evidence by agreeing to what the tax records would show if produced.

The fact that the jury understood that the assessed value was not to be taken as the true value, but only forty per cent of same, does not cure the error, as the assessor's valuation was no more competent to prove what was forty per cent of the market value than to prove such to be its whole value. In fact, this uncertainty rendered the evidence more objectionable.

We find no decision in this State decisive of this question. In Moffitt v. Hereford, 132 Mo. 513, 522, an appraisement which an administrator of an estate had caused to be made of shares of stock of a corporation was held not competent to show the prima-facie value of such stock, which prima-facie value was held to be the face value. The case of St. Louis, O. H. & C. Ry. Co. v. Fowler, 142 Mo. 670, 44 S. W. 771, a condemnation suit, touches on this question. There were two defendants, owners of the land sought to be condemned as tenants in common. One of them had made an assessment list in which he valued the property at $10,000. This was offered in evidence and the court properly held such evidence was admissible as against the party making it. It was also held inadmissible as against the other owner, who was not shown to have participated in making the valuation, but that as the two parties defendant had stipulated to being treated as joint owners and to share equally in the damages, the court held this stipulation to have the effect of making the evidence competent as to one also competent as to the other. The court said: "The parties placed themselves in the position of joint owners in respect to the damages to be assessed, and, on the trial, should not be permitted to shift their position, and claim as tenants in common, in order to prevent the introduction of evidence which would be competent if the ownership was joint. We do not think defendants can complain, though the admissions of Rothan, in the absence of the stipulation, would not have been admissible against the other defendant." This is a holding that assessment lists are not admissible as evidence against the landowners not participating in the assessment, except for the stipulation of the parties otherwise.

In Steam Stone-Cutter Co. v. Scott, 157 Mo. 520, 57 S. W. 1076, the question arose in this way: The plaintiff sought to hold liable for its debts certain stockholders in a failed corporation on the ground

that they had not paid in full for their stock, or rather that they had paid for it in property of little value. To show the value of this property, the court admitted in evidence the assessed value of same. The only objection made to this evidence was that the assessment lists were not sworn to. As to this the court said: "The objection to the assessment lists is based on the ground that they were not sworn to. These were the official lists on which the defendants paid their taxes, and while not conclusive, and not even entitled to as much weight as they would have been if sworn to by the defendants themselves, were still lists to which the taxpayers had given their assent, either actual or implied, and were legitimate evidence to be thrown into the scales with the rest." Whether these assessment lists had been signed but not sworn to, or how it could be implied that the assent of the owners was given, is not shown. The court seems to have passed only on the objection raised, that is, that the assessment lists were not sworn to. If that was the only objection made, we could agree to the court's ruling.

■ In the present case, it was positively shown that the landowner did not participate in making this assessment and in no way assented to the valuation placed on the land by the assessor. The only way it is claimed that the landowner assented to this valuation is that he paid the taxes. We do not think that this is enough to make the assessment lists admissible as to valuation. The landowner could do nothing except pay the taxes shown by the collector's book based on this assessment. In fact, the collector could not receive more. We have hardly reached the Utopian age when a taxpayer is expected to object to a tax collector that his taxes are too low and insist on paying on a higher valuation. In fact, in a number of cases it has been ruled that the mere listing of one's land for assessment is not a sufficient participation in the valuation made by the assessor to make same binding on him. If such listing does not have that effect, we hardly see how the mere payment of taxes can have such effect. See Allard v. La Plain (Me.), 130 Atl. 737, where the court said: "Value of real estate cannot be shown either by tax assessments or the amount of taxes paid." [Denver & R. G. Railroad Co. v. Heckman (Colo.), 101 Pac. 976.] Cases holding that assessment lists are proper evidence as tending to show ownership or claim of ownership to land are not in point here.

■ We cannot say that the error in admitting this evidence is harmless. For plaintiff to so argue is inconsistent with the persistence shown in the trial court to have such evidence admitted. This evidence went to the jury as being, in effect, the evidence of the assessor on the disputed question of the value of the land. What weight this evidence had with the jury cannot be told. The fact that the assessor

was a public official entrusted by the people with the duty of valuing land fairly and equally might have some weight. It might well have been insinuated in argument that the defendant never objected to the low valuation of his land when paying taxes for the public benefit, but reserved his objections till now that the railroad had to have this strip of ground in order to build its road. Treating this valuation by the assessor on a forty per cent basis as his evidence, such valuation is considerably lower than that of any other witness. His estimate of value not only affected the damage for the land actually taken, but also the damage to the land was not taken. The effect was to drag down the total damages awarded. The fact that the damages awarded were greater than was justified by the assessed valuation does not prove that this evidence had no effect on the jury, as the same might be said as to the evidence of several other witnesses on the value. We are unable to say that this evidence was not prejudicial.

As this case must be reversed and remanded, it is unnecessary to pass on many of the other alleged errors. Some of them are of no great importance and are not likely to arise on another trial. We will say, however, that while defendant complains of all the instructions given by the court of its own motion or on behalf of plaintiff, only one instruction marked "P-2" is complained of in the motion for new trial. Our review of errors is, of course, limited by the motion for new trial. An examination of the one instruction complained of, which is lengthy, discloses that it is in approved form and properly defines the measure of damages in cases of this character. We do not find it objectionable.

In view of another trial, we will also say that the court properly permitted the defendant to open and close the case, thereby assuming the burden of proving the amount of his damages. The court of its own motion instructed the jury that the burden was on defendant to establish his damages. This conforms to the law and the approved practice in this State. [Railroad v. Blechle, 234 Mo. 471, 481, 137 S. W. 974.]

Several assignments of error are predicated on the reception and rejection of evidence as to sales of other land. Of course, sales of land of like character and similarly situated, and not too remote in point of time, are admissible on the question of value (Metropolitan Street Ry. Co. v. Walsh, 197 Mo. 392, 403, 94 S. W. 860), and considerable latitude should be allowed by the trial court in this respect, leaving to the opposite party to show, by cross-examination or otherwise, any differences which the jury should know in making the comparison. However, some discretion should be exercised by the court

in preventing controversies arising on collateral matters and thus diverting the attention of the jury to minor issues.

█ What are termed forced sales under deeds of trust or executions do not reflect the fair market value of the land and are objectionable, but if either party puts in evidence such a sale, as did defendant in this case, he vouches for such sale as reflecting the fair value and cannot be allowed to discredit his own evidence by showing that the sale was in effect a forced sale and the price received inadequate. We may also say that mere offers to sell or even to buy similar land at a given price are not competent evidence to show value. Nor is it competent to show the price paid by the plaintiff in order to avoid a condemnation suit. [22 C. J. 179; Metropolitan Street Ry. Co. v. Walsh, supra.]

█ The court correctly instructed, we think, that no damage should be allowed as to the sixty-acre tract west of Hillcrest Road. This tract was completely severed from the one hundred twenty acres, through the east forty of which the railroad passed and on which were located the improvements. As to this one hundred twenty-acre tract, damages were properly allowed, both for the land actually taken and the depreciation in the value of that not taken. There is a total lack of evidence, however, as to this sixty-acre tract west of the highway being damaged or decreased in value.

For the error mentioned in admitting in evidence the assessed valuation of the land, the case is reversed and remanded. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.

---

*NOTE: Opinion filed at April Term, 1932. September 3, 1932; motion for rehearing filed; motion overruled at October Term, October 22, 1932.