## CITY OF AUSTIN v. CANNIZZO et al.
### No. 10133.

Court of Civil Appeals of Texas. Austin.
July 15, 1953.

Rehearing Denied July 31, 1953.

W. T. Williams, Jr., Clifton E. Speir, Robert L. Burns by Robert L. Burns, Austin, for appellant.

David L. Tisinger, Austin, for appellees.

GRAY, Justice.

This is a condemnation suit filed by appellant, the City of Austin, against appellees, John Cannizzo and others, to condemn 4.57 acres of land for park and street purposes. This 4.57 acres was a part of a larger tract owned by appellees, all of which lies within the corporate limits of the City of Austin.

Special commissioners were appointed who entered an award of $13,000 for the 4.57 acres. This sum was deposited by appellant in the registry of the county court on July 14, 1952. Objections to the award were filed by appellees and a trial to a jury was had.

Appellees filed admissions and obtained the right to open and close the evidence and the arguments. Thus the issues were narrowed to the value of the land taken and the damages to the remainder of the tract.

The issues and instructions submitted by the trial court which are pertinent here are:

"*Special Issue No. 1:*

"Do you find from a preponderance of the evidence that the 4.57 acre tract did not have a market value on or about July 14, 1952?

"In this connection, you are instructed that there is no market or market value in the sense here used, unless there has been a sufficient number of recent sales of comparable property to establish a prevailing price. Answer Yes or No.

"Answer: Yes.

"If you have answered the above and foregoing Special Issue No. 1 'Yes,' then answer the following Special Issues Nos. 2, 3, and 4; otherwise do not answer Special Issues Nos. 2, 3, and 4.

"By the term 'intrinsic value' as used in the following Special Issues Nos. 2, 3, and 4, is meant the price in cash the land should sell for if offered for sale by one not obliged to sell, and purchased by one not under necessity of doing so, taking into consideration all of the uses to which it was adaptable.

"*Special Issue No. 2:*

"What do you find from a preponderance of the evidence was the intrinsic value on or about July 14, 1952, of the 4.57 acre tract considered as severed land?

"Answer in dollars and cents.

"Answer: $21000.00.

"*Special Issue No. 3:*

"What do you find from a preponderance of the evidence was the intrinsic value on or about July 14, 1952, of defendants' tract of land, exclusive of the 4.57 acre tract, *before* such 4.57 acre tract was taken?

"In answering this Special Issue, you are instructed that by the term 'defendants' tract of land exclusive of the 4.57 acre tract,' is meant the tract outlined in red on Exhibit 'A' attached hereto, and made a part thereof.

"Answer in dollars and cents.

"Answer: $30000.00.

"*Special Issue No. 4:*

"Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally, and not peculiar to them, and connected with their ownership, use, and enjoyment of the particular tract of land outlined in red on Exhibit 'A' and taking into consideration the uses to which the 4.57 acre tract is to subjected, what do you find from a preponderance of the evidence was the intrinsic value of such tract outlined in red on Exhibit 'A' immediately *after* the taking of the 4.57 acre tract on July 14, 1952?

"Answer in dollars and cents.

"Answer: $26000.00.

"If you have answered the above and foregoing Special Issue No. One 'No', then answer the following Special Issues Nos. 5, 6, and 7; otherwise do not answer Special Issues Nos. 5, 6, and 7.

"By the term 'market value,' as used in the following Special Issues, is meant the price in cash the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying."

Issues 5, 6 and 7 were identical with issues 2, 3 and 4 with the exception that the inquiry was to market value in lieu of intrinsic value. These issues were not answered.

■ The submission of this cause appears to be in accord with suggested submission in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, except that there intrinsic value was neither defined nor submitted.

Upon the answers of the jury the trial court rendered judgment for appellees for $25,000 and interest thereon from July 14, 1952, at the rate of 6 per cent per annum.

The 4.57 acre tract may be roughly described as in the shape of a rectangle. Its east line is 290 feet, its south line is 678 feet, its west line is 269 feet and its north line is 653 feet. Also, there is a peninsula extending north from its northwest corner which is 25 feet by 104 feet. The land lies in the southwest portion of the city and is bounded on the east by Bluebonnet Lane, on the south by vacant land, on the west by the remainder of the tract owned by appellees and on the north by public school property.

It appears from the evidence that the lands in question were vacant and unsubdivided except that appellees had submitted to the city for approval plans for subdivision. It also appears that utility lines such as gas, water, sewer and light had not been extended to the land. Further the evidence shows that for some time preceeding the trial there had not been any active purchase and sale nor development of property in the immediate vicinity of the land.

Appellees and appellant called witnesses who testified as to sales and purchases of real estate in the city at places somewhat removed from the location of the land in question. These witnesses gave their opinions as to the value, and the absence of a market in that area for acreage of the kind and quality of the 4.57 acres. It appears these witnesses were agreed that no sales in the immediate vicinity had been consummated in from two to five years. Their testimony is not free from conflicts but we think it is not necessary for us to detail their evidence but only to deal with it generally. Appellant however complains that appellees' witness Stenger contradicted himself by saying the land had a market value and then said it had only an intrinsic value. An examination of this witness' testimony shows he was asked what he meant by market value and he said he could not define the term and further explained his testimony by expressing his opinion as to the value of the land, much of which was conditioned on the existence of conditions not existing. We think the witness did not express two different opinions on the same facts.

■■ The evidence presented an issue of fact for the jury as to the existence of a market value of the land. Under the evidence then it was proper for the court to have the jury determine such issue, and, in the event the jury found the land did not have a market value, to submit the issue as to its intrinsic value. City of Trinity v. McPhail, Tex.Civ.App., 131 S.W.2d 803.

■ It cannot be said that the evidence shows as a matter of law sales of land of like kind and quality to the 4.57 acres sufficient to establish in that part of the city a prevailing sales price, or market, for such land. In that event it was proper to show its actual or intrinsic value, and this would be the value to be assessed for its taking. Foley Bros. Dry Goods Co. v. Settegast, Tex.Civ.App., 133 S.W.2d 228, error ref. Fort Worth & D. N. Ry. Co. v. Sugg, Tex. Civ.App., 68 S.W.2d 570. Lower Colorado River Authority v. Hughes, Tex.Civ.App., 122 S.W.2d 222, error dism. Taylor County v. Olds, Tex.Civ.App., 67 S.W.2d 1102, error dism.

■ Art. 3265, Vernon's Ann.Civ.St., states the rule for assessing damages in condemnation proceedings. However as is indicated by its wording the statute is addressed largely to the commissioners rather than the trial court. State v. Carpenter, supra. In the case before us there was proof that there was no market for the land

and it was proper for the court to hear evidence as to actual value. State v. Schlick, 142 Tex. 410, 179 S.W.2d 246.

■ Appellant requested that the following definition be given in connection with issue one, supra.

"In this connection you are instructed that if you find from a preponderance of the evidence that comparable property has not ordinarily been the subject of sale in recent years, there is no market or market value in the sense here used."

We fail to see any substantial and material difference in the instruction given by the trial court and the one requested by appellant. At any rate we see nothing misleading in the instruction given that could have led to an improper answer to the issue.

■ We think issue one and the instruction given in connection therewith did not place the burden on appellant to prove that the 4.57 acres had a market value, but that the burden was properly placed on appellees. The issue plainly told the jury that a "Yes" answer was authorized only if the evidence preponderated in favor of such answer, and if it did not then a "No" answer would follow. Traders & General Ins. Co. v. Jenkins, 135 Tex. 232, 141 S.W. 2d 312. The general instruction contained in the court's charge to the effect that the burden was on appellees to show by a preponderance of the evidence the value of the land condemned, and the depreciation in value, if any, of the land remaining, related to the value of such land and could not have misled the jury as to the answer to be given to issue one.

■ There was no necessity for the court to include in the instruction given in connection with issue one the elements going to make up market value, or the lack of a market, further than was done. Such elements were evidence to be considered by the jury. State v. Carpenter, supra. Further the various words and phrases used in the instruction were easily understood by the jury from the evidence as to the property, its location, its extent, the sales and the prices and, as there used, they did not have a meaning different from their general use and as they are generally understood.

■ The jury having found that the land had no market value it then became their duty to find its intrinsic value. The witnesses gave opinions as to such value and we hold there was evidence, and sufficient evidence, to support the submission of issue 2 supra, and to support the judgment rendered thereon.

Appellant's points 12 to 18 complain of the submission of issues 3 and 4, supra, and the rendition of a judgment on the jury's answers thereto because there is no evidence to support the finding of values of the remaining land before and after the taking of the 4.57 acres, and because there was no evidence as to the intrinsic value of appellees' remaining land.

■ Appellant made no objection to the failure of the trial court to submit a separate issue inquiring if the remainder of appellees' land (after the 4.57 acres were taken) had a market value and did not request the submission of any such issue. If such a finding is necessary it must be presumed that the trial court made such finding in support of the judgment rendered. Rule 279, Texas Rules of Civil Procedure. Such finding is supported by the testimony of witnesses who testified to the value of the whole tract before and after the taking of the 4.57 acres, and at least one witness testified that there was no established market for acreage in any part of appellees' "area." All witnesses appear to have spoken of appellees' land in its entirety when they testified to its value before and after the taking of the 4.57 acres. One witness said that the condemnation would depreciate the value of appellees' land $8,000 or $9,000; another said that the remaining acreage had a value before the taking of $3,500 or $4,000 per acre and that by reason of the taking the value would decrease $500 per acre and lumped the decrease in value at between $5,000 and $7,000.

Appellees' condemned and uncondemned land was identified by witnesses on plats and maps. The exhibit to which the jury

was referred in issue three, supra (as may be noted this same instruction was incorporated in issue four, supra) shows the area marked in red to be considerably larger than the 4.57 acre tract, the dimensions of which was in evidence. By this comparison the jury could make some fair estimate of the acreage of the tract outlined in red.

One witness estimated the uncondemned portion of appellees' land at ten acres; one estimated it as being 250 feet by 240 feet; one said its value was $40 per front foot before the taking and $25 to $30 after the taking of the 4.57 acres, with construction costs being deducted from those figures, which costs were estimated.

The foregoing evidence is sufficient to refute appellant's argument that there is no evidence of per acre value of the land, and is sufficient to show there is some evidence to support the jury's verdict.

A reading of the testimony of the witnesses shows they were testifying as to the value of the land, but since these same witnesses testified that the 4.57 acres had no market value it cannot logically be assumed that they were testifying as to market value when speaking of the value of the land before and after the taking. We have not been directed to any evidence, and have not found any, that indicates the witnesses were speaking in a different sense when testifying as to the entire tract and when testifying as to the value of the 4.57 acres.

We think it cannot be said that the jury's answers to issues three and four are unsupported by the evidence.

Appellant requested the trial court to submit the following instruction:

"You are instructed that in your answer to Special Issue No. 2 you may take into consideration all uses to which the tract of land is adaptable, but you shall not take into consideration any uses which are prohibited on said tract by the Zoning Ordinance of the City of Austin."

It also requested that the instruction be given in connection with issue five which was not answered.

Appellant further objected to the definition of intrinsic value given by the trial court because the direction to the jury to consider "all of the uses to which the land is adaptable" permitted uses prohibited by zoning ordinances of the city.

We think the definition was not subject to the objection made. 16 Tex.Jur., § 345, at p. 1028, 29 C.J.S., Eminent Domain, § 160, p. 1024.

The parties stipulated that there was in effect a zoning ordinance placing appellees' land in "A" Residential. This ordinance prohibited commercial and business uses of the land.

The witness Andrews was asked:

"Q. Now, respecting the possibility of business uses out there, if any, what do you think about the desirability of that property when you consider the distance that you have to go to other business sites?"

Before he answered this question appellant's counsel took him on voir dire and asked if he knew of the zoning regulations as to the property? He answered that he did not know whether the use inquired about in appellees' question would or would not be permitted. Appellees' counsel asked and the witness answered as follows:

"Q. Mr. Andrews, respecting the location of the property itself and bearing in mind the surrounding areas, is or is not that property desirable from a commercial or a business viewpoint, assuming that the proper zoning could be obtained? A. Yes, Sir."

Because the answer was given on condition that the zoning could be obtained permitting commercial and business uses of the property we think no harm to appellant is shown.

The witness Stenger testified he did not know of any reason why the zoning on the 4.57 acre tract could not be changed. This answer was given over appellant's objection. Even if the answer is construed to relate to prohibited, remote and speculative uses of the property, the answer did not say the property was subject to such uses but merely related an absence of knowledge on

the part of the witness. We think reversible error is not presented.

The stipulated ordinance was before the jury and testimony as to the use of the property which was prohibited by the ordinance was a use to which the property was not adaptable under the existing conditions and could have had but little probative value. However it has been held that the ordinance would not render inadmissible evidence of such uses. Andrews v. City of Dallas, Tex.Civ.App., 232 S.W.2d 753. Reversed on other grounds City of Dallas v. Andrews, 149 Tex. 609, 236 S.W.2d 609. City of Tyler v. Ginn, Tex.Civ.App., 225 S.W.2d 997, error dism., w. o. j., Ginn v. City of Tyler, 148 Tex. 604, 227 S.W.2d 1022.

At any rate it appears that the evidence of the witnesses which was objected to was no more than conditional statements and was not unqualified evidence · of uses to which the land was adaptable under circumstances and facts not existing at the time of the taking.

Appellant's objections to the testimony of the witnesses Andrews, Brown and Stenger who testified to the value of the 4.57 acre tract for commercial uses went to the weight of such testimony it being shown that such uses were prohibited by the ordinance.

The witness Andrews testified that he was in the real estate business in Austin; that for four and one-half years he had been manager of a real estate development there; that he was familiar with and knew the values of residential and commercial properties to such extent as to enable him to form an opinion as to their value; that he had viewed appellees' property; that he had approached the property from different ways and had gone upon it; that he had investigated other property in that neighborhood, and gave his opinion as to the value of appellees' property.

The qualifications of the witness to testify as to the value of appellees' property was largely a matter for the trial court, and we think his testimony showed him qualified to express his opinion as to the value of the property. City of Corpus Christi v. McLaughlin, Tex.Civ.App., 147 S.W.2d 576. Driscoll v. Nolan, Tex.Civ.App., 130 S.W.2d 400.

There was admitted in evidence appellees' exhibits T and 13. Objections were made to the admission of these exhibits and the testimony with reference thereto. These exhibits were plats of appellees' land depicting it as a subdivision.

Appellees' counsel offered the exhibits as bearing on "the susceptibility of this property to any kind of development." and asked "that the evidence be so limited." By the replies of the court to appellant's objections and the statements of counsel for appellees it appears to be clear that the exhibits and the evidence of the witnesses with reference thereto was offered and was received for the purpose of showing the adaptability of the property for subdivided uses.

Appellant did not request that the testimony be limited.

In 18 Am.Jur., p. 991, § 347, it is said:

"Proof must be limited to showing the present condition of the property and the uses to which it is naturally adapted. It is not competent for the owner to show to what use he intended to put the property, nor what plans he had for its improvement, nor the probable future use of the property, nor the profits which would arise if the property were devoted to a particular use. Proof is, however, admissible to show the adaptability of the property for particular uses, as proper elements for consideration in estimating the value of the lands condemned. Thus, it may be shown that the property is suitable for division into village or town lots, but it is not permissible to introduce evidence relative to the number of supposed lots and their speculative value. In general, evidence is admissible as to the market value of the property, having regard to the existing business wants of the community, or such as may be reasonably expected in the immediate future, supported by a description of

the property, its location, surroundings, and advantages for any particular use, if any."

Further the record shows that the witness Stenger was limited to testifying as to the present value of the property rather than its future value.

■ The testimony of the witness Stenger relative to voluntary sales made by him of lots in the neighborhood of appellees' property was admissible on the issue of value and the fact that some such lots were improved was only a fact which should have been made known to the jury to enable the jurors to make a fair comparison. Kansas City & G. Ry. Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, 84 A.L.R. 1477. The question of the degree of similarity of the land sold to that in issue, the nearness in point of time of such sale to the time of the taking, and the distance between the two tracts were matters addressed largely to the discretion of the trial court in determining the admissibility of evidence of other sales. City of Houston v. Pillot, Tex.Civ.App., 73 S.W.2d 585. Reversed on other grounds, City of Houston v. Pillot, Tex.Com.App., 105 S.W.2d 870, where the court approved the holding of the Court of Civil Appeals on the admissibility of the evidence.

Appellant complains that the witness Stenger over its objection was permitted to testify as to discussions had by him with Mr. Parker of the City and Mr. Mayhall of the Schools in regard to Exhibit T.

■ The record shows that the witness did not detail any discussions or what was said but testified that discussions were had with these men. We think error is not reflected by the point.

■ The evidence shows that there was a rent house on appellees' remaining tract of land, but the size of its grounds is not shown and we are not directed to any evidence showing that rent was being paid by anyone living there. Neither is there any showing in the evidence that the tract on which it stands is in any manner separated from the remaining land. In this state of the record we cannot say there was not unity of use between the land on which the house stood and the remainder of the tract, and for which reason we cannot say issues three and four directed the jury to consider two separate and distinct tracts of land.

■ Appellant took the witness Andrews on voir dire to test his qualifications to express an opinion. The court then said:

"Gentlemen, let me excuse the jury. I think they ought not to be listening to this. Then we can go into this and have this question settled when we start in tomorrow morning."

Appellant complains that such statement was a comment by the court on the weight of the testimony.

The very purpose of appellant's examination was to determine the qualifications of the witness to testify before the jury, a question to be decided by the court. It was not appellant's purpose to discredit the witness in the eyes of the jury and we think no harm resulted to appellant's rights because of the statement by the court.

■ The judgment allowed interest from July 14, 1952, on the full amount of damages awarded. On that date appellant deposited $13,000 in the registry of the court, on which sum interest is not allowable, but interest is allowable on the remainder of the award from the date appellant acquired possession of the land which date the judgment fixed as March 14, 1952.

The judgment will be reformed so as to allow interest from March 14, 1952, on $12,000 only. Housing Authority of City of Dallas v. Shambry, Tex.Civ.App., 252 S.W. 2d 963, error ref. n. r. e.; Shambry v. Housing Authority of City of Dallas, Tex. Sup., 255 S.W.2d 184.

The judgment is reformed so as to allow appellees interest on $12,000 from March 14, 1952, at the rate of 6 per cent per annum, and as reformed the judgment of the trial court is affirmed.

Reformed and affirmed.