UNITED STATES of America, Petitioner, Appellant,

v.

CERTAIN PARCELS OF LAND IN THE COUNTY OF ARLINGTON, STATE OF VIRGINIA, and Howard W. Silsby, et al., Defendants, Appellees.

No. 7663.

United States Court of Appeals Fourth Circuit.

Argued June 17, 1958.

Decided Nov. 29, 1958.

---

288

Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., on the brief) for appellant.

Howard W. Smith, Jr., Alexandria, Va., for appellee, Smoot Sand and Gravel Corp.

Before SOPER and HAYNSWORTH, Circuit Judges, and PAUL, District Judge.

PAUL, District Judge.

This is an appeal by the United States from a judgment for $324,000.00 entered against it as the result of a jury verdict fixing that amount as compensation to be paid for a tract of land taken by condemnation for construction of the George Washington Memorial Parkway.

The property in question, which was owned by the Smoot Sand & Gravel Corporation, consists of a strip of land along the Virginia side of the Potomac River and opposite to or slightly upstream from the city of Washington, D. C. For purpose of description it will be taken that the river runs in a north-south direction. The land in question borders upon and extends about 2.6 miles along the river; its width varies from around 300 to 640 feet. Its total area is approximately 113 acres. The land is rough and precipitous, there being some places on it which are as much as 185 feet above mean low water mark on the river bank. At some points along the shore line of the river there are sheer precipices. At other points the land for a short distance back from the river is subject to flooding in times of high water. With these exceptions it may be said as a general description that the land rises steeply from the river to the top of a bluff, both the width of the tract and the height of the bluff above the river varying throughout its length. The western (or upper) boundary of the tract is approximately along the top of the bluff. The adjoining lands running back from the edge of the bluff and extending the length of the land taken by the Government are high class residential sections. A number of handsome homes with extensive grounds have been built and other portions of this adjoining land have been plotted as residential sub-divisions. In these lands adjoining and extending the length of the strip condemned there are some twenty or more different ownerships.

There are a number of ravines or gullies and three streams heading from the upper adjoining lands and running

across the condemned tract down to the river. In spite of the narrow and precipitous nature of the property and its generally uneven and rough topography witnesses for both parties agreed that the best use to which the land could be put was for residential purposes. It was testified that along the upper (western) boundary of the land, at heights of from 125 to 175 feet above the river, there were certain places (described by a witness as "plateaus") where it was practicable to build homes. The estimates of the aggregate acreage of these available building sites varied from about 40 to 55 acres. It was agreed that about 25 acres of the land bordering the river was subject to overflow. The remaining acreage was in the cliffs, ravines, streams, etc., and could not be used.

The Government bases its appeal on several alleged errors which, stated substantially as set out in its brief, are

1. That it was error to permit the introduction by the landowner of evidence of the value at which the property was assessed for purposes of taxation.

2. That the Court erred in giving certain instructions and in refusing others as to the highest and best use of the property.

3. That the Court erred in instructing the jury that it should consider probable increase in value of the property after the date of taking.

4. That the Court committed error in restricting cross-examination of certain witnesses.

The defendant introduced evidence as to what the records showed as to the assessed value of the property and then presented as a witness one of the members of the Reassessment Board which had made the assessment of all real estate in the county, who testified that he had not participated in assessing this particular land, but it was the policy of the Board to appraise all real estate at its fair market value and then assess it for taxation at forty per cent of such value. All of this testimony was objected to by the Government but was admitted by the Court, who expressed the view that evidence of assessed value would be objectionable when proffered by the condemnor but not when introduced by the landowner. The instructions also told the jury that it could consider the assessed value of the land in arriving at the fair market value.

■ We are of opinion that the trial court was in error in the admission of testimony as to the assessed value of the property. The general rule is that such evidence is not admissible on the question of value in a condemnation proceeding, and we find no authority, and have been cited none, which holds the rule inapplicable when the evidence is offered by the landowner. Subject to one limitation, this rule applies to the introduction of such evidence by either party. The exception is where the assessment is based on a value fixed by the owner himself in returning the property for taxation. In such cases evidence of assessed value may be offered, not on behalf of the landowner but against him, to contradict or discredit any present claims of a higher value.

The following citations state the general rule. Lewis on Eminent Domain (3d. Edition) Sect. 668:

"The assessment of property for taxation, being made for another purpose, and not at the instance of either party and not usually at the market value of the property, is not admissible as evidence of value in condemnation proceedings. But a sworn return made by the owner to the assessor, showing the market value of the property as required by statute, was held admissible both to impeach the owner and as independent evidence of value."

In 22 C.J. 178 it is said:

"The general rule is that a valuation made by public officials for the purpose of taxation, especially when remote in point of time, is not relevant to aid a jury in assessing the value of land or buildings, unless such valuation is based on a statement by the owner, in which case

it is competent against him, especially if his statement was made under oath."

The rule is stated in 31 C.J.S. Evidence § 182, p. 889 in substantially the same language as above, and in 18 Am.Jur. 993 we find:

"The assessed value of land, when it is placed upon the land by the assessors without the intervention of the landowner, is not admissible as evidence of market value; and no inference can fairly be drawn that it is correct from the failure of the owner to object on the ground that the valuation is too low."

All of the text quotations above are supported by citation of cases much too numerous to be set out here. And see also annotations in 17 A.L.R. 170 wherein the rule is stated that, "The assessed valuation of property is not evidence of its value for other than tax purposes.", and where cases from various jurisdictions are cited applying the rule to eminent domain proceedings. Following the case of Kansas City & Grandview Ry. Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, 892, 84 A.L.R. 1477, there is further annotation on the subject citing more recent cases as authority supporting the general rule. Kansas City & Grandview Ry. Co. v. Haake was a condemnation case which was reversed because of the admission of evidence of assessed value, the Court saying:

"Unquestionably, the law is, and ought to be, that the valuation placed upon property by a public official for purposes of taxation only is not competent evidence to go to a jury on a litigated question of the value of the land."

Again in a lengthy annotation in 39 A.L.R.2d it is said at page 214:

"It is the overwhelming weight of authority that assessed value is not competent direct evidence of value for purposes other than taxation", citing numerous cases, including those from federal courts as well as from a majority of the states.

Various reasons have been offered by the courts and by text writers for the exclusion of this evidence of assessed value. Some courts have rested their action on the statement that assessments for taxation are notoriously unreliable as a criterion of true value. Fort Collins Development R. Co. v. France, 41 Colo. 512, 92 P. 953; Johnson & Wimsatt v. Reichelderfer, 60 App.D.C. 186, 50 F. 2d 336, 337. Other courts have rejected the evidence on the ground that such a valuation is *res inter alios acta*. Ridley v. Seaboard & R. R. Co., 124 N.C. 37, 32 S.E. 379, 380; Suffolk & Carolina Ry. Co. v. West End Land & Improvement Co., 137 N.C. 330, 49 S.E. 350, 68 L.R.A. 333. In Cincinnati, H. & I. R. Co. v. McDougall, 108 Ind. 179, 8 N.E. 571, 573, the Court held assessed valuations inadmissible because "(S)uch valuations are to be regarded as having been made for a special purpose * * * and are not competent as original evidence of value for any other than the purpose for which they were made. * * *."

■ We think the sound reason for ruling out evidence of the assessed valuation is that it merely represents the opinion of persons who are not called as witnesses and not subject to examination as to the factors on which they based their opinion. To accept it would be to say to the jury: "Messrs. A., B. and C. (the assessors) were of opinion that this land had a value of $——", without presenting A., B. or C. as a witness. In Kansas City & Grandview Ry. Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, 84 A.L.R. 1477, the plaintiff, over objection, was allowed to show the assessment for taxation of land being condemned. In that case, as in this, it was shown that assessments were generally made at 40 per cent of true value. The appellate court held the evidence of the assessment to be error on the ground that it was merely an *ex parte* statement made by an officer not subject to cross examination, saying, among other things,

"The fact that the jury understood that the assessed value was not

to be taken as the true value, but only 40 per cent. of same, does not cure the error, as the assessor's valuation was no more competent to prove what was 40 per cent. of the market value than to prove such to be its whole value."

■ It is true that in most of the reported cases it was the condemnor who introduced the evidence of assessed value, but, as heretofore noted, we have found no authority which indicates that the rule should not be applied to both parties and the reasons for the rule suggest no ground for not so applying it. See Bowie Lumber Co. v. United States, 5 Cir., 155 F.2d 225, where, as here, the evidence was offered by the landowner. Nor are we able to say that the error was not material. The witnesses in this case, consisting of appraisers employed by the respective parties, differed widely in the valuations set upon the property. It is probable that the jury sensed this partisanship and were therefore the more inclined to attribute weight to the assessed valuation which had been fixed by public officials, having no interest in the litigation, and charged with the duty of making a fair valuation of all real estate in the county.

■■ It is suggested that evidence of assessed value, offered by the landowner, may be received as an admission against interest when the assessing authority is the condemnor. The asserted principle is said to be applicable here, for this proceeding, though brought in the name of the United States, is for the joint benefit of the United States, the Commonwealth of Virginia and the County of Arlington, the County, the assessing authority, being obligated to pay one-fourth of any final award. The principle is not without judicial support, when the assessing authority is the sole condemnor. In re Memorial Hall Site (City of Detroit v. Cristy), 316 Mich. 215, 25 N.W.2d 174; Louisiana Highway Commission v. Giaccone, 19 La.App. 446, 140 So. 286. Aside from the general unreliability of tax assessments as an indication of market value, which ought to make them suspect in any case, the assessing officials are representatives of the public. The power of a tax official to bind the public is limited, and what he does for purposes of taxation, should not be binding upon the public, or prejudicial to the public interest, when other public officials are engaged in the performance of a very different public function in an unrelated field. Though the tax official may purport to use market value as the criterion of assessed value, his primary concern is with relative, not absolute, values, but however he exercises his judgment for purposes of a reasonable distribution of the tax burden, his act, as an extrajudicial declaration, may not circumscribe the interest of the public in the difficult process of determining just compensation for property taken for public use. Girard Trust Company v. City of Philadelphia, 248 Pa. 179, 93 A. 947; In re Northlake Ave. (Wayland v. City of Seattle), 96 Wash. 344, 165 P. 113; City of Dallas v. Malloy, Tex. Civ.App., 214 S.W.2d 154.

Contentions have also been made that there was error in the receipt of inadmissible testimony, in the undue restriction of cross examination and in the failure to give certain requested instructions. As to the instructions requested by the United States, the District Judge indicated that he thought the principles contained in them were generally appropriate, but that he preferred to include them in his own language in the body of his charge rather than giving them at the end in the precise language of the requests. The Government contends, however, that the charge as given did not sufficiently and adequately cover the requested instructions. We need not now consider these questions, however, for our determination that evidence of assessed value was improperly admitted requires that the case be retried and we need not anticipate every question which may arise upon a retrial. We content ourselves with the observation that the requested instructions contained legal principles which should have been called

to the attention of the jury, and doubtless, they will be upon the retrial.

For the reasons set out the judgment is reversed.

Reversed.