UNION ELECTRIC COMPANY, a Missouri
Corporation, (Plaintiff) Appellant,

v.

Bernard J. MENKHAUS and Catherine S.
Menkhaus, His Wife, W. E. Burtelow, Trustee, and Henry E. Nuske, Cestui Que Trust,
(Defendants) Respondents.

No. 31369.

St. Louis Court of Appeals.

Missouri.

Sept. 17, 1963.

Motion for Rehearing or to Transfer
to Supreme Court Denied
Oct. 14, 1963.

J. B. Schnapp, Schnapp & Cooper, Fredericktown, J. W. Thurman, and Thurman,
Nixon & Smith, Hillsboro, for appellant.

Will B. Dearing, and Dearing, Richeson
& Weier, Hillsboro, for respondents.

L. F. COTTEY, Special Commissioner.

The determinative question on this appeal, and the only one to which we shall
address ourselves, is whether the trial
court committed reversible error in admitting certain testimony of respondents'
witness Murphy relative to the price received by him for a tract of land he had
sold to appellant, which testimony respondents' counsel was thereafter permitted to
stress in his argument to the jury. The
facts pertinent to the inquiry are these:

Union Electric Company, the appellant,
was engaged in constructing an electric
transmission line in Jefferson County and, in
the course of doing so, found it necessary
to condemn a 100-foot strip of right-of-way
across respondents' 171-acre farm. The
strip comprised 6.17 acres. At the same
time, and for the same purpose, the Company purchased outright from witness
Murphy a 3-acre tract lying "across the
road" and "a short half a mile" from respondents' farm. For it the Company paid
Murphy $9,000.00. At the trial of respondents' exceptions to the commissioners' report in the court below, respondents produced Murphy who testified, over an ineffective objection, that he had sold his land
for "$3,000.00 an acre." He was not asked
on direct examination, nor did he volunteer,
the name of the purchaser. That information came to light for the first time in the
course of his cross-examination. Because
controlling significance is attributed to that
circumstance by respondents, we are obliged
to quote extensively from the record to.

show how the problem developed and was disposed of, employing only such excisions and emendations as the interests of clarity and coherence may dictate. In these excerpts Mr. Schnapp speaks for appellant, Mr. Dearing for respondents. The pertinent part of witness Murphy's cross-examination was as follows:

"Mr. Schnapp: Sold for a particular purpose?

"Witness Murphy: Yes.

"Mr. Schnapp: Who bought this property?

"Witness Murphy: Union Electric.

"Mr. Schnapp: For the purpose of this transmission line?

"Witness Murphy: That's right."

In that way, for the first time, the identity of the condemnor as the purchaser was revealed and the purpose of the purchase was disclosed. Appellant promptly moved to strike Murphy's testimony from the record "because what Union Electric may have paid for the property for transmission lines is not competent evidence in the trial of this case because of the necessity to acquire the said acreage," and because "it was acquired in an effort to avoid condemnation." Thereupon the following colloquy took place between the court and counsel:

"Mr. Dearing: Well, your Honor, you can't ask questions and then get an answer you don't like and ask the court to strike it out. I didn't ask him who bought the property or anything else, I merely asked him if there'd been a sale.

"Mr. Schnapp: Obviously everyone in the court room except myself knew to whom it was sold.

"Mr. Dearing: He knew.

"The Court: Overruled.

"Mr. Schnapp: I now ask that a mistrial be declared by virtue of this incompetent and highly prejudicial testimony, your Honor.

"The Court: Overruled."

Murphy was excused. A few minutes later appellant's counsel approached the bench with a request for permission to recall him, out of the presence of the jury, "for the purpose of showing that at the time Mr. Dearing placed him on the witness stand, Mr. Dearing knew his property was sold to Union Electric." This exchange ensued:

"Mr. Dearing: You don't have to put him on, I say I know that to be a fact.

"Mr. Schnapp: You knew that at the time?

"Mr. Dearing: I knew it at the time and I instructed the man not to mention the sale to Union Electric. That's what happened. Sure I knew it, I was going to represent the man.

"Mr. Schnapp: You'll admit that in the record?

"Mr. Dearing: Sure I knew it, you can put it in there, the value, and I instructed the man not to say who he made the sale to.

"The Court: All right."

Thereafter there was this further development:

"Mr. Schnapp: May I approach the bench and make an objection, your Honor? I move the court to advise the jury to disregard the testimony of Frank Murphy in view of Mr. Dearing's previous statement that he knew, prior to putting Mr. Murphy on this witness stand, that Murphy had sold his three acres of land to Union Electric for this transmission line. His testimony is highly improper, incompetent and wholly immaterial, not a voluntary sale. It's sold in fact to avoid litigation; an element of collusion in the purchase of it and the necessity of acquiring it, all enter into

it, and for that reason we ask that the court so advise the jury.

"The Court: You got any law on that problem?

"Mr. Schnapp: Yes, sir.

"The Court: I'll look at it a little later.

"Mr. Schnapp: I also move for a mistrial, based upon these same elements.

"The Court: For the present, they'll both be overruled. I'll consider it on the motion for new trial."

In his argument to the jury counsel for respondents made a number of references to the Murphy property lying "right across the road" which "Frank Murphy had sold to the Union Electric" for "$3,000.00 an acre." He contrasted Murphy's testimony with that of a witness for appellant who had estimated respondents' land to be worth less than $200.00 an acre, saying, "Why did the Union Electric go across the road and pay $9,000.00, or $3,000.00 an acre, and then come in and want you to believe this man?" He said, further, "Now, if his (Murphy's) land is worth $3,000.00 an acre, do you think within a quarter of a mile and across the road that my clients' property is worth $25.00 an acre?" Appellant's objections to that line of argument were timely and well-grounded. All were overruled.

■ The prevailing rule is that evidence as to the price paid by the condemnor in the acquisition of other property essential to the project is not admissible to prove the value of the property condemned. Jahr, Eminent Domain, Sec. 144; Annotations, 118 A.L.R. 893 and 174 A.L.R. 395. Such evidence is regarded as "incompetent and prejudicial." Yonts et al. v. Public Service Co. of Arkansas, 179 Ark. 695, 17 S.W.2d 886, 888. Missouri follows the prevailing rule. In Metropolitan Street Ry. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860, the judgment in favor of the condemnee was reversed because of the admission of evidence of that character. In that case

the Supreme Court, quoting Lewis on Eminent Domain as to the reason for the rule, said, at l. c., 864: " 'What the party condemning has paid for other property is incompetent. Such sales are not a fair criterion of value, for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such price as may be fixed by the tribunal appointed by law. In most cases the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property. For these reasons such sales would not seem to be competent evidence of value in any case, whether in a proceeding by the same condemning party or otherwise.' " In Kansas City & G. Ry. Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, l. c. 895, 84 A.L.R. 1477, the court, citing the Walsh Case with approval, said, "Nor is it competent to show the price paid by the plaintiff in order to avoid a condemnation suit." And still more recently the same court, in Kansas City v. Thompson, Mo., 208 S.W.2d 216, l. c. 219, said: " * * * for the reasons set forth in Metropolitan Street Ry. Co. v. Walsh we adhere to the view that sales between condemnee and condemnor of property involved in the proceeding are not admissible in evidence on the issue of value and damages." It is unnecessary to pursue the subject further. The evidence was inadmissible.

■ Respondents disparage its effect. They say that Murphy "did not express an opinion as to the value of the land condemned" or any other land, "he merely stated a fact as to what he had done." They conclude, "A statement by the witness as to the amount he received for a certain tract of ground could in no way prejudice the rights of appellant." We do not agree. The evidence could have been

offered for no other purpose than to furnish the jury a yardstick for measuring the value of respondents' neighboring land, and we will not be so egregiously naive as to suppose it had any other effect. One need only look to respondents' argument to see how skillfully it was exploited for that precise purpose before the jury. We have no quarrel with respondents' repeated assertion that evidence of bona fide sales of similar lands in the vicinity, made at or about the time of the taking of the condemnees' land, is admissible to establish the value of the land taken. Of course, it is. But, as the Walsh case puts it, there is "a manifest distinction" between a sale made in the ordinary course of business and one made to the condemnor who is under the necessity of acquiring the property in order to complete the project under construction. The latter is not an "arm's length" transaction; it "is in the nature of a compromise, and for that reason is not a fair measure of value." South Park Commissioners v. Ayer, et al., 237 Ill. 211, 86 N.E. 704. We find it hard to believe that that distinction has been entirely lost on respondents, else why the precaution of instructing the witness to conceal the purchaser's identity?

■ That brings us to respondents' second point. They insist that appellant "voluntarily developed" the fact that Murphy had sold his land to the condemnor, and hence, that whatever error inheres in that disclosure has been invited by appellant. We think not, for two reasons. In the first place, the disclosure of the purchaser's identity was not voluntary. The inquiry that elicited it was compelled by the fact that the witness had been instructed not to reveal on direct examination the very thing that would expose the impropriety of his testimony. The damaging fact of the *sale price* was thereby introduced into the case in disguise. The only way to have it ejected was to unmask it. This appellant did, necessarily and rightly. And appellant's objection to the testimony, made at that point, was timely and proper. Kansas City v. Thompson, supra, (208 S.W.2d 216)

l. c. 220. In the second place, respondents' argument proceeds from the premise that the quality of prejudice which renders such evidence incompetent lies in the fact that the condemnor is the purchaser, and that proof of the *sale price*, standing alone, is unobjectionable. The converse is the reality. It is the sale price that furnishes the inaccurate yardstick; the identity of the purchaser is simply the means by which the impropriety of that evidence is recognized. In fact, evidence of the price at which such a sale was consummated would be just as prejudicial and improper if the purchaser's identity as condemnor remained concealed, the only difference being that, in that situation, the incident could probably not be argued with quite such telling effect to the jury.

■ Finally respondents say, "The amount of the verdict in itself reflects that the jury did not accord the testimony of Frank Murphy any probative value." This, because the $7,000.00 verdict cannot be equated with the taking of 6.17 acres of land worth $3,000.00 an acre. We are not impressed with that suggestion. The figure of $3,000.00 per acre given the jury as the value of the Murphy land lying "within a quarter of a mile and across the road" from respondents' land was three times as great as respondents' other three witnesses thought respondents' farm was worth and something like ten times as great as the average value put on it by appellant's six witnesses. The verdict was nearly three times as large as the commissioners' award. We cannot say that the result was unaffected by the incompetent evidence of the Murphy sale; indeed we must presume the contrary. Casto v. Railway Express Co., Mo.App., 219 S.W.2d 276, 281. And its prejudicial effect could hardly have been more determinedly aggravated than it was by respondents' argument to the jury in this case.

It is unnecessary to consider appellant's other assignments of error. For the reasons assigned the judgment should be re-

versed and the cause remanded for a new trial.

The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion of L. F. COTTEY, Special Commissioner, is adopted as the opinion of the court.

The judgment is reversed and the cause remanded for a new trial.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.